UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD R. BEEMER,

    Plaintiff,

v.                                            Case No. 1:14-cv-678
                                            Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

# OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on November 4, 1976 (AR 283).[1] He completed the 12th grade and had previous employment as an assembler, factory laborer, construction worker, and maintenance person (AR 289). Plaintiff alleged a disability onset date of September 5, 2008 (AR 69, 283). However, the administrative law judge (ALJ) adjusted this date to June 11, 2011, one day after an ALJ entered a decision denying plaintiff's previous claim for disability (AR 30, 69, 134-47). Plaintiff identified his disabling conditions as pins in foot and hip, migraines, lower back pain, syrinx, muscle spasms, bulging discs/disc disease, scoliosis, depression, anger problems, learning disability and asthma (AR 287). The ALJ in the present case reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 21, 2013 (AR 69-81). This decision, which

---

[1] Citations to the administrative record will be referenced as (AR "page #").

was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

3

716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended onset date of June 11, 2011 and that he met the insured status requirements of the Act through December 31, 2012 (AR 71). At the second step, the ALJ found that plaintiff had the following severe impairments: posttraumatic complex cervical syrinx with degenerative disc disease of the cervical spine, cervical syringomyelia, and headaches; chondromalacia of the left patellofemoral joint, status post ORIF [open reduction and internal fixation] of the right talus in 2007, with removal of hardware in 2011; chronic obstructive pulmonary disease (COPD); recurrent major depressive disorder, without psychosis; history of substance abuse; and alcoholism (AR 71-72). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 73).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he must be permitted the option of alternating between sitting and standing every 30 minutes. He is unable to climb ladders, ropes, or scaffolds. He can balance, stoop, kneel, crouch, crawl, or climb ramps and stairs occasionally. He is unable to push/pull with the right upper extremity, but, with the left upper extremity, he can occasionally push or pull. He can occasionally reach overhead bilaterally. He must avoid concentrated exposure to pulmonary irritants, moving machinery, unprotected heights, and vibration. He is limited to simple, routine, and repetitive tasks. He can engage in occasional interaction with coworkers, supervisors, and the public. He is not able to perform work at a production rate pace (e.g., assembly line work), but he can perform goal-oriented work (e.g., work as an office cleaner).

(AR 74). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 79).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs in the national economy (AR 80). Specifically, plaintiff could perform the following work: document preparer ("1,200 jobs within the region, 45,000 nationally"); address clerk ("1,000 jobs region-wide, 48,000 in the United States of America"); and circuit board assembler ("2,100 jobs in the region, 89,000 within the U.S.A.") (AR 80).[2] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 5, 2008 (plaintiff's original onset date) through February 21, 2013 (the date of the decision) (AR 80-81).[3]

### III. ANALYSIS

Plaintiff raised three related issues on appeal:

- **A.   The decision is internally inconsistent as it gives substantial weight to the post hearing consultative psychologist who found work preclusive mental restrictions.**

- **B.   Substantial evidence fails to support the findings of the RFC**

- **C.   Remand for further proceedings or reversal for payment of benefits.**

At the close of the administrative hearing, the ALJ ordered a psychological examination of plaintiff (AR 61-64). Kenneth Vander Woude, Ph.D. conducted the examination and prepared a consultative examination report (AR 629-34) and a medical source statement of ability

---

[2] The ALJ did not identify the region in which the 4,300 jobs are located. However, the Court notes that the vocational expert identified the region as the State of Michigan (AR 56).

[3] The Court notes that the ALJ's decision inexplicably referenced plaintiff's original onset date of September 5, 2008 rather than the new onset date of June 11, 2011, as assigned by the ALJ (AR 69, 80-81).

to do work-related activities (mental) (AR 624-26). Plaintiff's request for a remand or reversal of the ALJ's decision arises from the ALJ's evaluation of these two documents.

The ALJ evaluated Dr. Vander Woude's report and medical source statement in tandem with the state agency non-examining consultant, Matthew Rushlau, Ed. D., as follows:

> In a mental residual functional capacity assessment, the state agency found no significant limitation in the capacity to deal with simple instructions, but moderate impairment in the capacity to cope with detailed instructions. The state agency found moderate limitation in the ability to interact with the general public, but no limitations with respect to coworkers and supervisors. The state agency noted that it was adopting the prior ALJ decision [AR 184-86] (Ex. 4A/11-12; see also 3A).
>
> Consultative examiner Kenneth Vander Woude, PhD, found moderate limitation in the ability to make judgments regarding complex work-related issues. He found mild limitation in the ability to deal with complex instructions. He found moderate social limitations. He noted a global assessment of functioning of 60 and a diagnosis of recurrent major depressive disorder without psychosis, alcoholism, and rule out borderline intelligence. Mental status examination revealed a clean, but not shaven, individual with clean but torn clothing. His gait was normal, but he shifted positions constantly for comfort while sitting. The claimant was oriented. He had normal motor activity and adequate motivation. His stream of mental activity was spontaneous, well organized, and not illogical. His judgment and concentration were poor. He denied hallucinations, delusions, illusions, persecutions, obsessions, and compulsions. He reported feelings of worthlessness when people do not appreciate the things he does. He denied current suicidal ideation or intent. The claimant appeared downcast, with flat affect. He did not appear anxious, angry, hostile, suspicious, or fearful. He was able to recall 5 digits forward and 4 backward. He could recall three of three items after three minutes. He was able to name four past presidents and he knew his birthday. He made 6 errors in mental calculation (Exs. 18F and 19F).
>
> In evaluating the opinion evidence, the undersigned assigned substantial weight to the opinions of the state agency and Dr. Vander Woude, as these are supported by Dr. Vander Woude's objective examination findings, discussed above, and consistent with the treating source evidence, discussed below.

(AR 76-77).

The state agency consultant, Dr. Rushlau, did not set out his own narrative for a mental residual functional capacity (RFC), but simply stated "[t]he ALJ decision of 6/2011 is

adopted for the current claim" (AR 186). The referenced ALJ's decision from June 10, 2011, found that plaintiff had the following RFC related to his mental impairments:

> He can perform simple routine, repetitive tasks, but should have only occasional interaction with the public, coworkers, and supervisors.

(AR 139).

The gist of plaintiff's claim is that the ALJ gave substantial weight Dr. Vander Woude's opinions, which included "work-preclusive factors" but did not include those opinions in the RFC. A claimant's RFC is a medical assessment of what the individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

Plaintiff's claim is based upon two portions of Dr. Vander Woude's report. First, Dr. Vander Woude's report reviewing plaintiff's stream of mental activity notes that plaintiff had poor judgment and poor concentration (AR 631). Plaintiff's Brief at pp. ID## 686-87, 689 (docket no. 12). Plaintiff contends that poor judgment and poor concentration were work-preclusive limitations and that "it would be virtually impossible" for a hypothetical person to perform substantive gainful employment activity with those limitations. *Id.* Second, plaintiff points out two deficiencies in plaintiff's abstract thinking which appear in a separate section of the doctor's report. *Id.* at p. ID# 688.

7

Plaintiff's claim, i.e., that the ALJ's RFC determination is internally inconsistent and unsupported by substantial evidence, is based upon only a small part of Dr. Vander Woude's evaluation. Dr. Vander Woude's report addressed aspects of plaintiff's daily functioning (social functioning, past and present interests, and activities) and mental status (attitude/behavior, stream of mental activity, mental trend/thought content, emotional reaction, sensorium and mental capacity), as well as general observations about plaintiff (e.g., plaintiff's posture, clothing, hygiene, height, weight and lack of a driver's license).

With respect to the stream of mental activity, plaintiff refers to only 2 of 11 factors considered by Dr. Vander Woude. The doctor's complete assessment of plaintiff's stream of mental activity was as follows:

> B. STREAM OF MENTAL ACTIVITY
>
> Spontaneous: yes
> Blocked: no
> Illogical: no
> Vague: no
> Pressure of Speech: no and he mumbles frequently
> Slowed: yes
> Concrete/Circumstantial: yes
> Well organized: yes
> Judgment: poor
> Concentration: poor

(AR 631). In addition, plaintiff's statement deficiencies in abstract thinking involve only one part of the doctor's review of plaintiff's sensorium and mental capacity (AR 631-32). In this regard, the Court notes that plaintiff provided responses to most of the questions which the doctor used to evaluate his abstract thinking (AR 632-33).

Dr. Vander Woude's accompanying medical source statement explicitly addressed plaintiff's restrictions in his ability to perform work-related activities. In this statement, the doctor

noted that while plaintiff had "poor judgment and [unintelligible] skills", plaintiff had no restrictions in the ability to understand and remember simple instructions, carry out simple instructions, or make judgments on simple work-related decisions (AR 624). The doctor opined that plaintiff had plaintiff had mild restrictions in the ability to understand, remember and carry out complex instructions, and moderate restrictions in the ability to make judgments on complex work-related decisions, the ability to interact appropriately with the public, supervisors and co-workers, and the ability to respond appropriately to changes in a routine work setting (AR 624-25).

Here, the Court finds no inconsistency between the doctor's opinion that plaintiff had no limitations in performing simple work and moderate limitations related to interacting with others and responding to changes in a routine work setting, and the ALJ's RFC, which limited plaintiff "to simple, routine, and repetitive tasks" and "occasional interaction with coworkers, supervisors, and the public" and "goal-oriented work" (as opposed to "work at a production rate pace") (AR 74). The Court also finds that the ALJ's RFC determination is supported by substantial evidence. Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: July 28, 2015 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge